UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| MARTIN COUNTY COAL CORPORATION, | ) ) ) | Civil Action No. 08-93-ART |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION** |
| UNIVERSAL UNDERWRITERS INSURANCE SERVICES, INC., | ) ) ) ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case arises from an insurance coverage dispute. In the complaint, the plaintiff, Martin County Coal Corporation ("MCCC"), alleges that the defendant, Universal Underwriter's Insurance Services, Inc. ("Universal"), breached an insurance contract by failing to provide coverage in defense of a state court action. R. 1, Ex. 1 at 3-4. MCCC also raises claims that Universal acted in bad faith and violated the Kentucky Unfair Claims Settlement Practices Act, Ky. Rev. Stat. §§ 304.12-230, 235. *Id*. The Court stayed discovery on those issues pending the resolution of the threshold coverage issue. R. 15 ¶ 4.

For the following reasons, the Court grants MCCC's motion for partial summary judgment, R. 33, and denies Universal's motion for summary judgement, R. 45.

### I. BACKGROUND

MCCC filed its complaint against Universal on April 18, 2008, in Martin Circuit Court. *See* R. 1. Universal removed the case to federal court on May 7, 2008. *Id*. MCCC seeks

resolution of an insurance coverage issue arising out of an accident that occurred on its property. R. 1, Ex. 1 at 3-4.

On July 7, 1997, MCCC, a mining company, entered into an agreement with Crum Motor Sales ("CMS") to service MCCC's vehicles. *See* R. 16, Ex. 1. The agreement allowed CMS to enter MCCC's property subject to CMS's agreement to indemnify MCCC for certain liabilities. *Id.* The agreement also required CMS to provide MCCC with proof of insurance coverage for worker's compensation, commercial general liability, employer's liability, and automobile liability "in amounts reasonable acceptable to Martin County." *Id.* To comply with this agreement with MCCC, CMS obtained coverage from Universal, which was effective from September 1, 2000, to September 1, 2001. *See* R. 16, Ex. 2 at 1-A.

On January 19, 2001, Phillip Crum, an officer and employee of CMS, was on MCCC's property to pick up one of MCCC's vehicles for service. R. 16, Ex. 3 ¶ 10-14. Mr. Crum was a passenger in a MCCC vehicle when a boulder struck the vehicle, severely injuring Mr. Crum. *Id.* As a result of his injuries, Mr. Crum, through a guardian, John F. Crum, and CMS filed a civil action against MCCC and other defendants in Martin Circuit Court on January 4, 2002. R. 16, Ex. 3. In that suit, MCCC asserted a counterclaim against CMS for indemnity pursuant to the indemnification agreement between MCCC and CMS. *See* R. 16, Ex. 4. CMS notified Universal of MCCC's counterclaim and requested coverage and a defense to MCCC's indemnity claim, but Universal denied coverage in a letter dated May 29, 2002. R. 16, Ex. 5. Universal did not defend CMS against MCCC's counterclaim.

Over five years later, counsel for MCCC notified Universal in a December 11, 2007, letter

2

that the lawsuit that Mr. Crum filed was set for mediation in January 2008, and requested Universal's representation as the insurer of CMS. R. 46, Ex. 8. Universal did not participate in the mediation. R. 3 ¶ 12. Mr. Crum and MCCC ultimately settled the personal injury claim for a lump sum payment of $1,810,000 and monthly payments until March 1, 2028, of $10,250 from an annuity. R. 46, Ex. 4. As part of this settlement, CMS consented to the Martin Circuit Court's entry of judgment in favor of MCCC on MCCC's counterclaim against CMS. R. 16, Ex. 6. Additionally, CMS assigned its rights as an insured of Universal to MCCC in exchange for MCCC's agreement not to enforce the judgment against CMS. R. 16, Ex. 7.

In this case, MCCC, sitting in the shoes of CMS pursuant to the assignment, filed the complaint against Universal on April 18, 2008. R. 1.[1] The only question before the Court at this stage is whether Universal was required to provide a defense for CMS's contractual indemnity obligation to MCCC in the state court action. Universal was so required for the reasons set forth below.

## II. PROCEDURAL HISTORY

The Court ordered the parties to file "simultaneous motions for summary judgment on the threshold coverage issue on or before **September 14, 2009**." R. 15 ¶ 4. Responses were due thirty days thereafter. *Id.* MCCC filed a timely motion for partial summary judgment on the

---

[1]Universal claims that MCCC has no damages because its insurance carrier paid the settlement with Phillip Crum. R. 46 at 34; *see also* R. 46, Ex. 4. Universal raises this issue in only two sentences in its brief. *See* R. 46 at 34. In response, MCCC claims the assignment from CMS to MCCC is valid. *See* R. 50 at 21-22. This issue is not within the scope of the duty to defend—the only question currently before the Court. *See* R. 15 ¶ 4. Accordingly, Universal's argument is rejected.

3

threshold coverage issue on September 14, 2009. R. 33. MCCC's memorandum in support of its motion is located in the record at R. 16. Universal's response was due on October 14, 2009. R. 15 ¶ 4. Instead of filing a response to MCCC's motion, Universal filed three motions to enlarge the discovery time. R. 34, 39, and 41. The Court denied all three motions. R. 38, 40, and 42.

On November 10, 2009, the Court ordered Universal to respond to MCCC's motion. R. 43. Universal filed a response to the motion, R. 46, and a cross motion for summary judgment, R. 45.[2] Universal's response and cross motion were the same memorandum filed twice. MCCC filed the same memorandum as a reply to its motion for summary judgment and as a response to Universal's motion. R. 50 and 51. MCCC also moved to strike Universal's cross motion for summary judgment as untimely under the Court's scheduling Order. R. 49. Universal responded to the motion to strike, R. 52, and MCCC filed a reply, R. 53.

On December 15, 2009, the Court held a telephonic conference with the parties. R. 59. The Court denied MCCC's motion to strike Universal's cross motion for summary judgment and also requested further information from the parties on the automobile exclusion under the policy's General Liability Coverage. *Id.* at 1-2. Universal filed a notice containing the cites to four Kentucky cases pertaining to automobiles, R 58, and MCCC filed a response, R. 60. The Court also vacated the pretrial conference set for January 4, 2010, and set a telephonic conference with

---

[2]Universal's response and cross motion for summary judgment contained arguments beyond the scope of the threshold coverage issue. *See* R. 46 at 34-38. These arguments are not addressed in this opinion because they are outside the scope of the Scheduling Order. *See* R. 15 ¶ 4.

the parties on that date. R. 59. The motions for summary judgement are now ripe for review.

### III. APPLICABLE LAW AND STANDARD OF REVIEW

Universal removed this case to federal court on the basis of diversity jurisdiction. R. 1. The parties agree that Kentucky law governs the interpretation of the insurance contract between Universal and CMS. *See* R. 16 at 5; *see also* R. 46 at 10. In Kentucky, whether a provision of an insurance policy requires the insurer to defend its insured is an issue of law for the Court to determine. *See Kemper Nat. Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002) (citations omitted); *see also Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994) (holding that insurance contract provisions are questions of law unless there are factual disputes under Kentucky law) (citation omitted). Because the parties do not dispute the basic facts of this case, the coverage issue under the insurance contract between CMS and Universal is a question of law. The parties agreed the issue here is a question of law for the Court on the December 15, 2009, teleconference. *See* R. 59. Accordingly, the summary judgment procedure is appropriate to resolve this matter. *See Allstate Indem. Co. v. Shoopman*, No. 09-83, 2009 WL 2342736, at *2 (E.D. Ky. July 28, 2009) (citing *Finnell v. Cramet, Inc.*, 289 F.2d 409, 414 (6th Cir. 1961)).

### IV. ANALYSIS

MCCC argues that Universal was required to provide coverage to CMS and defend CMS against MCCC's counterclaim based on three separate, independent provisions of the insurance contract between CMS and Universal: (1) Garage Coverage (Part 500), (2) General Liability Coverage (Part 950), and (3) Umbrella Coverage (Part 980). R. 16 at 7. MCCC filed the entire

5

policy as an exhibit to its motion for summary judgment. *See* R. 16, Ex. 2.

Universal had an obligation to defend CMS "if there [was] any allegation [in the complaint] 'which potentially, possibly or might come within the coverage of the policy.'" *Ayers v. C & D Gen. Contractors*, 269 F.Supp.2d 911, 914 (W.D. Ky. 2003) (quoting *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)). Applying this standard, MCCC is correct that Universal had a duty to defend CMS under these three separate policies. As a result, MCCC is entitled to partial summary judgment on the threshold coverage issue.

### 1. Garage Coverage (Part 500)

The Garage Coverage is defined generally as:

> **INSURING AGREEMENT—** WE will pay all sums the INSURED legally must pay as DAMAGES . . . . because of INJURY to which this insurance applies caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.

R. 16, Ex. 2 at 39.

Universal does not dispute that this language required Universal to defend CMS on MCCC's counterclaim. R. 46 at 15. Instead, Universal argues that three different exclusions to the Garage Coverage policy apply allowing it to deny coverage. *Id*. Universal has the burden of showing that these exclusions apply. *See Ky. Sch. Bds. Ins. Trust v. Bd. of Educ. of Woodford County*, No. 2002-CA-001748-MR, 2003 WL 22520018, * 9 (Ky. Ct. App. Nov. 7, 2003) (unpublished) ("[A]n insurer who disclaims its duty to defend based on a policy exclusion 'bears the burden of proving the applicability of the exclusion.'" (quoting *Bd. of Pub. Educ. of Sch. Dist.*

*of Pittsburgh v. Nat. Union Fire Ins. Co. of Pittsburgh*, 709 A.2d 910, 913 (Pa. Super Ct. 1998))).

Further, with respect to exclusions in insurance contracts, the Kentucky Supreme Court held:

> Because coverage exclusions are "contrary to the fundamental protective purpose of insurance," they are "strictly construed against the insurer" and "will not be extended beyond their clear and unequivocal meaning." But that strict construction should not overcome "plain, clear language resulting in a strained or forced construction."

*Kemper*, 82 S.W.3d at 873-74 (quoting *Diamaco, Inc., v. Aetna Cas. & Sur. Co.*, 983 P.2d 707 (Wash. Ct. App. 1999)) (citations omitted). Thus, like in baseball where the tie goes to the runner, under Kentucky insurance law, if an insurance contract is "susceptible to two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted." *Id*. at 874 (quoting *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223, 227 (Ky. 1994)).

Because Universal needs only one of the three exclusions to apply to relieve its obligation to defend CMS under the Garage Coverage policy, each of Universal's three arguments are reviewed separately. All three of Universal's arguments, however, fail.

### A. Contractual-Liability Exclusion, Exclusion (d)

Universal argues that the contractual-liability exclusion abrogated its obligation to defend CMS. R. 46 at 16. Universal is incorrect.

Under the terms of the policy, Universal need not provide coverage under the following contractual-liability exclusion:

> (d) liability assumed under any contract or agreement. This exclusion does not apply to an INSURED CONTRACT under:

7

>    (1) INJURY Groups 1, 2 and 3; . . . .

R. 16, Ex. 2 at 43. Accordingly, "liability assumed under any contract or agreement" that does not constitute an "insured contract" as defined is outside the scope of the policy. An "insured contract" is defined, in relevant part, as:

> "INSURED CONTRACT" means any of the following, if such contract or agreement is executed prior to the OCCURRENCE:
> . . . .
> (6) that part of any other contract or agreement pertaining to AUTO HAZARD or GARAGE OPERATIONS . . . under which YOU assume the tort liability of another. . . .

R. 16, Ex. 2 at 40-41. The parties do not dispute whether the indemnification agreement between MCCC and CMS is "liability assumed under any contract or agreement" under section (d). It clearly is. Instead, they dispute whether the indemnification agreement between CMS and MCCC is an "insured contract." And it is.

Under the terms of the policy, there are three elements of an "insured contract." First, it must be "executed prior to the OCCURRENCE." R. 16, Ex. 2 at 40. Here the indemnification agreement was executed in 1997—prior to Phillip Crum's injury in 2001. Second, it must pertain to "garage operations." *Id.* at 41. That term is defined in the policy as "the ownership, maintenance, or use of that portion of any premises where YOU conduct YOUR AUTO business and all other operations necessary or incidental thereto." *Id*. at 40. The indemnification agreement allowed CMS to enter MCCC's premises to pick up MCCC's automobiles for service. R. 16, Ex. 1. Even though CMS was not on its premises, the indemnification agreement still meets the definition of an "insured contract" because an agent of CMS going on MCCC's

8

property to pick up automobiles was an operation "necessary or incidental" to CMS's garage operations. Third, an insured contract must "assume the tort liability of another." R. 16, Ex. 2 at 40-41. Here, CMS assumed the tort liability of MCCC with respect to any CMS employees injured while on MCCC's property. For these three reasons, the indemnification agreement between CMS and MCCC was an "insured contract" under the express terms of the policy. Indeed, Universal admits that the indemnification agreement appears to be an "insured contract." *See* R. 46 at 17 ("We concede that, on its face, the Martin County-Crum Motor Sales Indemnification Agreement appears to be an INSURED CONTRACT."). Universal, however, attacks the validity of the indemnification agreement and its duty to defend CMS without relying on the express terms of its policy.

Universal argues that the indemnification agreement between CMS and MCCC is not an "insured contract" because the agreement is unenforceable in Kentucky as a matter of public policy. R. 46 at 17-23.[3] As MCCC correctly notes, however, Universal could have—and should

---

[3]Universal argues that the indemnification agreement is unenforceable on several different grounds. It argues that it is an "illegal exculpatory contract," noting that the Mine Safety and Health Administration cited MCCC on two different occasions for safety violations and that "a party [such as MCCC] cannot contract away liability for damages caused by that party's failure to comply with a duty imposed by a safety statute." R. 46 at 18 (quoting *Cumberland Valley Contractors, Inc., v. Bell County Coal Corp.*, 238 S.W.3d 644, 651 (Ky. 2007)). Universal also argues that the agreement is unenforceable on the basis that MCCC compelled CMS to sign the agreement because CMS did not "stand upon equal footing" with MCCC. R. 46 at 20-21. Further, Universal notes that the Martin County Circuit Court refused to uphold a similar agreement that Phillip Crum executed in favor of MCCC in the state court action concerning Mr. Crum's injuries. R. 46 at 20. Next, Universal claims the agreement violates a Kentucky law that makes it "unlawful for any owner or employer to require another employer to waive its remedies granted by this section as a condition of receiving a contract or purchase order." R. 46 at 22 (quoting Ky. Rev. Stat. § 342.700(3)).

have—raised the validity of the indemnification agreement during the defense of CMS against MCCC's counterclaim.[4] R. 50 at 7-8. Indeed, Universal may have successfully defended CMS by arguing that the indemnification agreement was unenforceable. That is not the issue before the Court. The question here is whether Universal had a duty to defend CMS—not whether CMS had a valid legal argument to prevail against MCCC's counterclaim in the state court action.

At this stage then, Universal's argument fails because its policy covers an "insured contract"—the policy does not state "enforceable insured contract" or any other term to that effect. Under Kentucky law, "an insurance contract must be construed without disregarding or *inserting* words or clauses." *See Kemper*, 82 S.W.3d at 875 (emphasis added). The Garage Coverage policy does not clearly and unambiguously cover only those "insured contracts" that are enforceable. For Universal to prevail on its argument, the Court would have to: (1) interpret the policy language to include the term "enforceable" before "insured contract" and, then, (2) rule that the indemnification agreement was unenforceable under Kentucky law. Reaching the question of the validity of the indemnification agreement, however, is improper at this stage. *See Kemper*, 82 S.W.3d at 873-74. Universal could have drafted its policy to provide coverage only to *enforceable* contracts. For example, Universal could have included language making it clear that only a valid, enforceable contract under Kentucky law constitutes an "insured contract." But it did not. Moreover, under Kentucky law, the policy must be construed strictly against the

---

[4]In general, an insured purchases insurance in order to have a legal defense to all types of lawsuits that may be covered under the insurance policy—even frivolous lawsuits. An insurance company's duty to defend its insured is not contingent on the strength or weakness of the lawsuit to which an insurance company must provide a defense.

insurer, Universal. *See id.* (coverage exclusions are strictly construed against the insurer). Therefore, exclusion (d) in Universal's policy does not apply only to those "insured contracts" that are enforceable.

CMS, by requesting Universal's defense, thought the policy covered its indemnification agreement with MCCC. One of the reasons that CMS purchased insurance from Universal was because the indemnification agreement with MCCC required such insurance. *See* R. 16, Ex. 1 at 2 ("Indemnitor [CMS] shall provide to Martin County proof of insurance coverage . . . . in amounts reasonably acceptable to Martin County."). By the express terms of the policy, CMS may have reasonably concluded that Universal covered the indemnification agreement with MCCC. *See Powell-Walton-Milward*, 870 S.W.2d at 227 ("Any limitation on coverage or an exclusion in a policy must be clearly stated in order to apprise the insured of such limitations."); *see also Fryman for Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky. 1986) (Terms in insurance policies "must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." (citing *Donohue v. Washington Nat. Ins. Co.*, 82 S.W.2d 780 (Ky. 1935))). CMS was not apprised of Universal's coverage limitations. Indeed, Universal did not even raise the public policy argument when it initially denied coverage in 2002, *see* R. 16, Ex. 5, nor did Universal raise this issue in its answer to the complaint, *see* R. 3. Universal first raised the public policy argument in its November 16, 2009, response to MCCC's motion for partial summary judgment—more than seven years after it initially denied coverage in May 2002.

Universal's argument boils down to this: an unenforceable agreement cannot be an "insured contract" under the policy. As stated above, this argument is precluded by *Fryman for Fryman* and *Powell-Walton-Milward* because exclusion (d) was not clearly applicable here. However, even if Universal's public policy argument was not so precluded, its argument also fails as a matter of law. The definition of the term "contract" in Kentucky does not necessarily imply that a "contract" is always legally enforceable. *See Beaver v. Oakley*, 279 S.W.3d 527, 533 n. 23 (Ky. 2009). In that recent case involving worker's compensation claims, the Kentucky Supreme Court noted:

> BLACK'S LAW DICTIONARY (8th ed. 2004) recognizes that a *contract* may not necessarily always mean a legally enforceable agreement in all contexts because it includes the following as one of several alternative definitions of *contract:* "Loosely, an unenforceable agreement between two or more parties to do or not to do a thing or set of things; a compact < when they finally agreed, they had a contract>."

*Id.*

In support of its argument, Universal cites two unpublished federal diversity jurisdiction cases (applying Wyoming and Mississippi state law) holding that indemnification agreements that are unenforceable under state law are not "insured contracts." *See* R. 46 at 17 (citing *True Oil Co. v. Min-Continent Cas. Co.*, 173 F.App'x 645 (10th Cir. 2005); *Certain London Mkt. Ins. Cos. v. Pa. Nat. Mut. Cas. Ins. Co.*, 106 F.App'x 884 (5th Cir. 2004)). These unpublished opinions are not controlling because they do not apply or interpret Kentucky law. More importantly, Universal does not cite—nor is the Court aware of—a single Kentucky case holding that an insurer has no obligation to defend an "insured contract" if the contract is unenforceable under

12

Kentucky law.

The plain terms of the policy do not require that an "insured contract" be enforceable under the law of Kentucky or any other sovereign. Given the lack of clarity in the policy language to support applying this exclusion, Universal cannot base its decision to deny coverage to CMS on the contractual-liability exclusion in section (d) of the policy. *See Kemper*, 82 S.W.3d at 873-74. Accordingly, Universal had a duty to defend the indemnification agreement between CMS and MCCC as an "insured contract" under the policy.

### B. Employee-Liability Exclusion, Exclusion (c), Part (1)

Next, Universal argues that the employee-liability exclusion in exclusion (c), part (1) relieved its obligation to defend CMS. R. 46 at 23-24. The exclusion does not.

Under the terms of the policy, Universal need not provide coverage under the following employee-liability exclusion:

> (c) INJURY as defined in Group 1 and 2 to any employees of the INSURED arising out of and in the course of their employment by or on behalf of the INSURED:
>
> > (1) for which the INSURED may be held liable as an employer or in any other capacity;
> > . . . .
> > This exclusion does not apply:
> > (I) under Part (1), to domestic employees of the INSURED not entitled to Workers' Compensation benefits;

R. 16, Ex. 2 at 42-43.

Universal argues that CMS was "held liable as an employer" under this provision because CMS's workers' compensation carrier paid Philip Crum's workers' compensation benefits after his accident. R. 46 at 23. In support of its argument, Universal cites the Kentucky Supreme

13

Court case *Brown v. Indiana Ins. Co.*, 184 S.W.3d 528 (Ky. 2005). *Id.* That case resolved the following question:

> whether a commercial automobile liability insurance policy affords coverage for damages sought in a tort action *brought against the insured employer for the wrongful death of its employee*, where the action would have been barred by the exclusive remedy provision of the Kentucky Workers' Compensation Act but for the fact that the employer failed to procure a policy of workers' compensation insurance.

*Brown*, 184 S.W.3d at 531 (emphasis added). The *Brown* case is inapposite here because CMS did not seek Universal's coverage against a claim brought by Phillip Crum, a CMS employee, against CMS. Instead, CMS requested that Universal cover its contractual indemnification agreement that was the basis of MCCC's counterclaim. In the counterclaim action brought by MCCC, any liability that could attach to CMS would lie in CMS's status as a party to the indemnification agreement—and not its status as Phillip Crum's employer. Accordingly, the employee liability exclusion in exclusion (c), part (1) is inapplicable in this case.

### C. Employee-Liability Exclusion, Exclusion (c), Part (2)

Universal also argues that the employee-liability exclusion in exclusion (c), part (2) applies here. R. 46 at 24-26. Universal is incorrect.

Under the terms of the policy, Universal need not provide coverage under the following employee-liability exclusion:

> (c) INJURY as defined in Group 1 and 2 to any employees of the INSURED arising out of and in the course of their employment by or on behalf of the INSURED:
> . . . .
> (2) any obligation of the INSURED to indemnify or contribute with another because of such INJURY; . . . .

14

>This exclusion does not apply:
>
>. . . .
>
>(ii) under Part (2), to any contract excepted in Exclusion (d); . . . .

R. 16, Ex. 2 at 42-43. As noted in the policy, the employee-liability exclusion does not apply to "any contract excepted in Exclusion (d)." Exclusion (d) defines an "insured contract." As addressed above, the indemnification agreement was an "insured contract," and thus, the employee-liability exclusion in exclusion (c), part (2) does not apply in this case.

In summary, none of the exclusions to coverage in the Garage Coverage policy apply in this case. Universal has not met its burden of showing these exclusions apply. *See Ky. Sch. Bds. Ins. Trust*, 2003 WL 22520018 at * 9. Accordingly, Universal had a duty to defend CMS against MCCC's counterclaim under the Garage Coverage policy. *See Ayers*, 269 F.Supp.2d at 914 (an insurer has an obligation to defend its insured "if there is any allegation in the complaint 'which potentially, possibly or might come within the coverage of the policy'" (quoting *Brown*, 814 S.W.2d at 279)).

### 2. General Liability Coverage (Part 950)

The General Liability Coverage is defined generally as:

>**INSURING AGREEMENT**—WE will pay all sums the INSURED legally must pay as DAMAGES . . . . because of INJURY to which this Coverage Part applies, caused by an OCCURRENCE arising out of the following hazards when shown in the declarations.

R. 16, Ex. 2 at 61. The only "hazards" listed in the declarations are a "premises hazard" and a "contractors hazard." R. 16, Ex. 2 at 1-G. The "contractors hazard" does not apply here. The "premises hazard" does apply.

15

Universal argues that Phillip Crum's injury was not covered by this policy. It is incorrect. Further, Universal did not even address CMS's coverage claim under this policy when it initially denied coverage in 2002. *See* R. 16, Ex. 5.

Universal begins by noting that the only premises scheduled in CMS's declarations are premises that CMS owned. R. 46 at 29; *see also* R. 16, Ex. 2 at 1-A. On the declarations page, CMS listed, among others, its property located at 439-41 Main Street in Inez, Kentucky, as a location for "auto sales & services." R. 16, Ex. 2 at 1-A.

The General Liability Coverage, however, is not limited only to injuries that arise out of occurrences on the premises listed in the declarations. The policy defines "premises" as "the ownership, maintenance, or use of the premises scheduled in the declarations *and all operations necessary or incidental thereto*, except the PRODUCTS-COMPLETED OPERATIONS HAZARD." R. 16, Ex. 2 at 61 (emphasis added). Universal ignores the fact that "premises" includes "all operations necessary or incidental thereto." In fact, this language applies here. Phillip Crum, by going to MCCC's mine to retrieve a vehicle for CMS to service, was involved in an "operation necessary" to the use of a premise CMS declared under the policy. Accordingly, the policy covered CMS under this general provision.

Next, Universal argues in the alternative, that even if the general policy language provides coverage, the exclusions under this provision allowed Universal to deny coverage. Universal argues that exclusion (i)(1) applies. R. 46 at 29. That exclusion states that the insurance policy does not apply to: "INJURY or COVERED POLLUTION DAMAGE arising out of the ownership, use, loading or unloading of any: (1) AUTO, except YOUR parking of an AUTO not

16

owned, rented, leased, or loaned to any INSURED, on or on the ways next to the PREMISES scheduled in the declaration." R. 16, Ex. 2 at 66. Universal believes this exclusion applies because Phillip Crum was riding in a MCCC vehicle when he was injured, and thus, the liability arises out of the use of an automobile. R. 46 at 29-30.

Universal filed a notice citing four cases in support of its argument that this exclusion applies. *See* R. 58 (citing *State Farm Mut. Auto. Ins. Co. v. Ky. Sch. Bd. Ins. Trust*, 851 F.Supp. 835 (E.D. Ky. 1994); *Hartford Ins. Co. of Am. v. Ky. Sch. Bd., Ins. Trust*, 17 S.W.3d 525 (Ky. Ct. App. 1999); *Key v. Rager*, 858 S.W.2d 718 (Ky. Ct. App. 1993); *Ky. Farm Bur. Mut. Ins. Co. v. Hall*, 807 S.W.2d 954 (Ky. Ct. App. 1991)). Universal did not explain the relevance of these cases to this case. The Court gave Universal an opportunity—but did not require Universal— to do so. *See* R. 59. The cases Universal cites focus on the "arising out of" language in the context of automobiles and school buses. None of these cases, however, involve the situation here—an insurance company seeking to deny coverage based on an automobile exclusion to a General Liability Coverage policy. Indeed, none of these cases even involve exclusions under insurance policies.

While it is true that Kentucky courts have "have employed a liberal interpretation to the phrase 'use of an automobile,'" the "causal connection [between the use of the automobile and the injury] must be more than incidental," *State Farm Mut. Auto. Ins. Co*, 851 F.Supp. at 837 (citations omitted). Reasonable minds can differ on whether Phillip Crum's injury was "incidental" to the use of an automobile. *See Kemper*, 82 S.W.3d at 874 (stating that if an insurance contract is "susceptible to two interpretations, one favorable to the insured and the

17

other favorable to the insurer, the former will be adopted") (citation omitted). Phillip Crum's injury was not a typical automobile accident. He was injured by a boulder rolling down a hill in a coal mining area. The accident occurred on a coal mining site—not on a public street or highway. Phillip Crum's injury could have occurred had he been walking instead of riding in the vehicle. Coal mining sites are inherently much more dangerous than places automobiles are typically used. In other words, the causal connection between the use of an automobile and Phillip Crum's injury is not clear and unequivocal. *See id.* at 873-874 ("coverage exclusions are 'contrary to the fundamental protective purpose of insurance,' they are 'strictly construed against the insurer' and 'will not be extended beyond their clear and unequivocal meaning'") (citation omitted). Under *Kemper,* the standard for applying an exclusion is a high one for Universal to meet. Universal has not met its burden of justifying this exclusion. *See Ky. Sch. Bds. Ins. Trust*, 2003 WL 22520018 at * 9.

Universal also argues that the contractual-liability exclusion in (d) and employee-liability exclusions in (c) parts (1) and (2) apply. These exclusions are the same exclusions addressed in the Garage Coverage policy section above. These exclusions do not apply for the reasons previously described. Accordingly, Universal had an obligation to defend CMS under its General Liability Coverage.

### 3. Umbrella Coverage (Part 980)

The Umbrella Coverage is defined generally as:

**INSURING AGREEMENT**—WE will pay for LOSS, subject to the terms and conditions of this Coverage Part, in excess of:
(a) coverage provided in any UNDERLYING INSURANCE;

18

      (b) coverage provided to an INSURED in any other insurance;
      (c) in the absence of (a) or (b) the retention show in the declarations.

R. 16, Ex. 2 at 75.

      Universal did not even address CMS's coverage claim under the Umbrella Coverage policy when it initially denied coverage in 2002. *See* R. 16, Ex. 5. Universal's arguments here are the same as its arguments under the Garage Coverage policy. R. 46 at 31-32. It does not argue that the general language precludes coverage. Instead, it argues that three separate exclusions apply to deny coverage. *Id*. Those exclusions are the same exclusions addressed above: the contractual-liability exclusion in (d) and employee-liability exclusions in (c) parts (1) and (2). Accordingly, those arguments are rejected for the reasons stated above.

## V. CONCLUSION

Universal had an obligation to defend CMS against the counterclaim raised by MCCC in the lawsuit in Martin Circuit Court that arose out of Phillip Crum's injuries.  Universal's duty to defend CMS is based on three separate provisions of the insurance policy:  (1) Garage Coverage (Part 500), (2) General Liability Coverage (Part 950), and (3) Umbrella Coverage (Part 980).  Accordingly, it is **ORDERED** as follows:

(1)     MCCC's motion for partial summary judgment, R. 33, is **GRANTED**.

(2)     Universal's cross motion for summary judgment, R. 45, is **DENIED**.

This the 4th day of January, 2010.

Signed By:
*Amul R. Thapar* AT
United States District Judge