UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 08-93-ART

MARTIN COUNTY COAL
CORPORATION, PLAINTIFF,

V. **OPINION & ORDER**

UNIVERSAL UNDERWRITERS
INSURANCE SERVICES, INC., DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the Defendant's motion for sanctions. [R. 127]. In its motion, Universal Underwriters Insurance asks that sanctions be imposed upon Martin County Coal for its alleged failure to comply with an order of this Court. For the reasons discussed herein, the Defendant's motion is granted, in part, and denied in part.

I. BACKGROUND

The facts of this case are clearly laid out in the Court's Memorandum Opinion & Order issued November 12, 2010. [R. 122]. For the sake of clarity, however, the underlying facts are summarized here. This case stems from an injury that occurred at one of MCC's mines in 2001. Phillip Crum, an employee of Crum Motor Sales ("CMS"), was seriously injured by a falling boulder while traveling across MCC's mine site to work on a vehicle. Phillip Crum sued MCC, and MCC cross claimed against CMS arguing that an agreement between MCC and CMS entitled MCC to indemnification for Crum's injuries. CMS asked its insurer, Universal Underwriters, to defend against the indemnity claim, but Universal refused.

MCC and Phillip Crum eventually settled the underlying tort claim for $3.65 million, and CMS settled with MCC for the same amount, plus attorney's fees and costs. In exchange for MCC's promise not to enforce the indemnification agreement, CMS assigned to MCC its claim against Universal for breach of its duty to defend. MCC, standing in CMS's shoes, filed the present suit against Universal. The Court has already held that Universal breached its duty to defend CMS and owes damages, including the settlement amount, if reasonable. [R. 61].

Universal has sought to prove that the indemnification agreement entered into between CMS and MCC is unenforceable based on the theory that a disparity in bargaining power between MCC and CMS rendered the indemnification agreement void as a matter of public policy. In order to conduct discovery on the issue of the parties' relative bargaining power, and its other defenses, Universal noticed the corporate deposition of MCC pursuant to Federal Rule of Civil Procedure 30(b)(6). In its notice, Universal listed several subjects on which it expected to take testimony:

1. The negotiation and execution of the Indemnification Agreement between you [MCC] and Crum Motor sales, Inc. dated July, 1997.
2. The negotiation of contracts similar or identical to the Indemnification Agreement between you and Crum Motor Sales, Inc. dated July, 1997.
3. The negotiation and execution of the Release and Assumption of Risk apparently signed by Phillip Crum.
4. The negotiation of agreements similar or identical to the Release and Assumption of Risk apparently signed by Phillip Crum.
5. Your [MCC] annual financial statements (including but not limited to, any "balance sheet" or statement of assets and liabilities and any "income statement" or statement of profits and losses) for the years 1994-2002 inclusive.
6. Your federal and Kentucky corporate income tax returns for the years 1994-2002 inclusive.
7. The numbers of trucks, cars or other types of motor vehicles in your fleet during the period from January 1, 1994 to January 29, 2001.
8. The identities of the entities or organizations responsible for the repair service and maintenance of your trucks, cars or other types of motor vehicles in your fleet from January 1, 1994 to January 29, 2001.
9. The existence and location of any motor-vehicle repair, service or maintenance

|  | facility for you fleet during the period from January 1, 1994 to January 29, 2001. |
| --- | --- |
| 10. | The type of motor vehicle Phillip Crum was picking up on January 29, 2001. |
| 11. | Your contribution of any sum to the tort settlement with Phillip Crum. |
| 12. | Your responses to Universal Underwriters' interrogatories and document requests in this case. |

[R. 95, Attach. 1, 2]. After its motion for a protective order was denied, [R. 83] MCC produced for deposition its designee, MCC's former president, Dennis Hatfield. Universal found Mr. Hatfield's testimony to be wholly inadequate with respect to 8 of the 12 subjects noticed and moved the Court for an order compelling MCC to produce a designee adequately prepared to testify on the 8 remaining subjects.

The Court agreed with Universal and ordered MCC to produce for deposition "a designee, or designees, knowledgeable and adequately prepared to testify on" the subjects noticed by Universal. [R. 121]. MCC complied with this directive and produced three additional corporate designees:

1. John Marcum, Manager of Financial Planning for Massey Coal Services;

2. John Poma, Vice President and Chief Administrative Officer of Massey Energy Company;[1] and

3. Jeffrey Jarosinski, Vice President, Treasurer, and Chief Compliance Officer of Massey Energy Company.

Again, however, Universal found the testimony of these individuals to be insufficient. Because of MCC's perceived failure to comply with Rule 30(b)(6) and this Court's Order, [R. 121] Universal has filed the present motion for sanctions. [R. 127].

---

[1] Massey Energy is the parent company of Martin County Coal.

In its motion, Universal asks the Court to find that, because MCC has failed to testify regarding its own financial condition, the "unequal footing" between Crum Motor Sales and Martin County Coal is "established for the purpose of [this] action." [R. 127 at 7]. Next, Universal argues that because MCC failed to testify concerning its answers to interrogatories and responses to document requests, the Court should not allow MCC to present any witnesses or evidence concerning its alleged damages. Finally, Universal argues that MCC cannot prove damages because although MCC has alleged that it contributed $100,000 to the tort settlement with Phillip Crum, it has presented no testimony on that point.

## II. ANALYSIS

Pursuant to Fed. R. Civ. Proc. 37(b), the Court may impose sanctions if a party fails to obey an order to provide or permit discovery. Universal argues that MCC disobeyed an order of the Court by failing to designate individuals able to testify about:

1. MCC's tax returns for the years 1994 - 2002;

2. MCC's financial statements for the years 1994 - 2002; and

3. MCC's responses to Universal's interrogatories and document requests.

It is undisputed that the Court ordered MCC to comply with Rule 30(b)(6) and provide a designee, or designees, adequately prepared to testify about these subjects. Each of the alleged failures will therefore be addressed separately.

### A. Martin County Coal's Tax Returns

During the discovery period, Universal requested copies of MCC's corporate income tax returns for the years 1994-2002. Universal apparently requested these documents in order to discover MCC's annual income, information that would be useful in its effort to prove the relative

4

bargaining power of MCC and CMS. In response to the Court's order directing it to provide a designee to testify about those tax returns, MCC designated Jeffrey Jarosinski, Vice President, Treasurer, and Chief Compliance Officer of Massey Energy Company. On December 6, 2010, Mr. Jarosinski appeared for a Rule 30(b)(6) deposition and was questioned by Universal's attorney. During the deposition, Universal's attorney produced excerpts of the tax returns previously disclosed by MCC and asked Mr. Jarosinski if he could say whether the excerpts were genuine and authentic business records accurately reflecting the income of MCC for those years. [R. 148, *Deposition of Jeffrey Jarosinksi* at 12-13]. Mr. Jarosinski stated that, without seeing the full return from which the excerpts had been taken, he could not. [Id. at 13].

The parties frame their arguments around whether MCC and Mr. Jarosinski acted in bad faith by failing to authenticate the tax return excerpts. The question here, however, is not whether MCC provided a designee who was capable of authenticating tax returns on its behalf. Undoubtedly, Mr. Jarosinski would have been able to had Universal presented him with complete copies of the returns. Rather, the issue is whether his failure to authenticate excerpts of tax returns violated the Court Order and Rule 30(b)(6).

Rule 30(b)(6) explicitly requires the corporate party "to have persons testify on its behalf as to all matters known or reasonably available to it and, therefore, implicitly requires such persons to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition." U.S. v. Taylor, 166 F.R.D. 356, 362 (M.D.N.C. 1996); see also Starlight International, Inc. v. Herlihy, 186 F.R.D. 626, 639 (D. Kan. 1999) ("Corporations ... have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject

matter."). Accordingly, in preparing for his deposition, MCC was required to make sure that Mr. Jarosinski reviewed the tax returns which were to be the subject of his deposition. If, by failing to review those documents, he was unable to authenticate the tax returns and verify MCC's annual income, the Court would agree that MCC violated the Order and would be subject to sanctions. There is simply no evidence, however, that MCC either failed to prepare Mr. Jarosinksi for the deposition or was acting in bad faith. When Mr. Jarosinski informed Universal's counsel that he could not authenticate the excerpts without being presented the complete returns, Universal's counsel did not inquire how he prepared for the deposition or state whether he reviewed the tax returns prior to the deposition. Universal has presented no compelling evidence to suggest that his failure to authenticate the tax return excerpts was based on bad faith or lack of preparation.

**B.      Martin County Coal's Financial Statements (Balance Sheets)**

During discovery, Universal requested that MCC produce copies of its financial statements, including balance sheets and income statements, for the years 1994-2002. In response to a Court Order compelling it to respond, [R. 26] MCC provided some financial statements responsive to this request. On December 1, 2010, MCC provided for deposition John Marcum, a financial analyst at Massey Coal Services. [Rs. 128, Attach. 1, 148]. Mr. Marcum was designated by MCC to testify on its behalf regarding MCC's financial statements for the years 1994 to 2002. [R. 128, Attach 1 at 19]. To Universal's surprise, just before this deposition was to begin, MCC produced for the first time numerous financial documents that had not been previously disclosed. [Rs. 127 at 4-5, 134 at 3]. Rather than postpone Mr. Marcum's deposition, Universal's counsel reviewed the documents on the spot and proceeded to question him regarding those documents.

Mr. Marcum was asked to review the financial statements and for each fiscal year, to state MCC's profit and equity. Mr. Marcum was able to do this for most years, but MCC did not produce balance sheets for the years of November 1993 - October 1995 and November 1999 - December 2002. Because MCC did not produce balance sheets for these years, Mr. Marcum was unable to testify as to MCC's equity. Universal asserts that MCC's failure to produce balance sheets and provide related testimony constitutes a violation of the Court's Order and warrants the imposition of sanctions. The Court is inclined to agree.

The record reflects that Universal first requested copies of MCC's financial statements on December 16, 2008. [R. 141, Attach. 1 at 1]. On December 1, 2010 MCC produced, for the very first time, numerous financial documents including income statements and balance sheets. MCC does not explain this belated disclosure, except that in response to the Court's Order compelling it to provide additional 30(b)(6) testimony, MCC conducted a search which revealed the additional financial documents. [R. 134 at 3]. Despite the additional time to search for financial documents responsive to Universal's request, MCC still did not produce balance sheets for many of the years requested by Universal. Mr. Marcum's deposition testimony reveals that these financial statements were readily available to MCC and that there was no excuse for not producing them either during discovery or at the deposition. With regard to the balance sheets from 1993 to 1995, the following exchange took place:

> Q. The financial statements in which I am most interested for that period of time, Mr. Marcum, would be the balance sheet. That is the statement of assets and liabilities and the profit and loss or income statement. Are those two documents -- are those two financial statements contained in that binder?
> A. The balance sheet, I believe is not. The profit and loss statement, yes.
> Q. Okay. Where is the balance sheet for that period?
> A. I do not know.

> Q. Did you specifically ask Ms. Wicker about that?
> A. No.
> Q. Did you ask anybody at Martin County Coal about that?
> A. No.

[R. 148, *Deposition of John Marcum* at 37]. Similarly, no balance sheets were produced for the years 1999 to 2002.

> Q. Okay. Is there a balance sheet for that calendar year?
> A. No.
> Q. Why not, sir?
> A. I didn't print it.
> Q. You didn't plug the proper command into the computer to print it?
> A. Yea, I just was looking at income statement.
> Q. That information exists on the computer?
> A. Yes.
> Q. Is that a computer that others, besides you, have access to?
> A. Yes.
> Q. For example, the folks at the home office of Massey Energy in Richmond, Virginia, would they have access to that computer system?
> A. A select group of the financial group, yes.

[Id. at 47].

Universal requests that, as a sanction for MCC's failure to produce discovery as directed by the Court, that the Court find the "unequal footing between Crum Motor Sales, Inc. and Martin County Coal Corporation as 'established for purposes of [this] action.'" [R. 127 at 7]. In fact, Rule 37(b) states that failure to comply with a court order may be sanctioned by "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims ... ." Fed. R. Civ. Proc. 37(b)(2)(A)(I).

Due to MCC's repeated failure to produce these financial documents either during discovery or at Mr. Marcum's deposition, MCC is in violation of the Court's July 20, 2009 and November 8, 2010 Orders and warrants such a sanction. [Rs. 26, 121].

Therefore, at trial, the jury should be instructed that the unequal economic footing between MCC and CMS has been established by the Court.

C.  **Martin County Coal's Responses to Interrogatories and Document Requests**

Universal next argues that MCC failed to provide a Rule 30(b)(6) designee to testify about its responses to Universal's interrogatories and document requests. MCC in fact designated John Poma to testify on this subject. [R. 129, Attach. 1 at 8]. Mr. Poma, however, indicated that he could only testify about MCC's discovery responses to the extent they were related to the indemnification and release and assumption of risk agreements signed by Phillip Crum and other contractors. [Id.]. This designation failed to comply with the Court's Order. [R. 121]. MCC was ordered to produce a designee, or designees, capable of testifying about its responses to Universal's interrogatories and document requests. [Id. at 12]. MCC provided a designee who could only testify regarding a small portion of MCC's discovery responses. MCC is in violation of the Court's November 8, 2010 Order and sanctions are appropriate.

Universal, however, has not demonstrated prejudice, and without evidence of resulting harm, the Court cannot fashion an appropriate remedy. It is clear, however, that MCC technically violated the Court's Order. Therefore, MCC will be ordered to reimburse Universal for the costs and expenses associated with taking Mr. Poma's deposition.

D.  **Martin County Coal's Failure to Provide Additional Testimony Concerning its Contribution to the Settlement with Phillip Crum**

Universal finally takes issue with MCC's reliance on the deposition testimony of Roberta Kiser as its sole source of knowledge concerning the settlement of the underlying

tort claim between Phillip Crum and MCC. In its first notice of deposition to MCC, Universal requested that MCC provide a designee to testify about its contribution to the settlement with Phillip Crum. [R. 95, Attach. 2 at 2]. In its motion to compel MCC to provide a proper designee in compliance with Rule 30(b)(6), Universal again sought to take deposition testimony regarding MCC's contribution to the tort settlement. [R. 95]. In its response, MCC asserted that by providing its former attorney, Roberta Kiser, for deposition, MCC had already provided Universal with all the information it had concerning the settlement with Phillip Crum. [R. 104 at 2-3]. MCC filed into the record a report indicating that MCC contributed $100,000 to the tort settlement and that Roberta Kiser's deposition testimony represents all of MCC's knowledge on the subject. [R. 126 at 2].

Universal now asserts that because MCC chose to represent Roberta Kiser's testimony as all of its knowledge concerning the tort settlement with Phillip Crum, MCC should not be allowed to introduce any additional evidence of the settlement contribution at trial. This result is necessitated, not by sanction, but by the Rules. Rule 30(b)(6) was designed to ensure that the deposition of a corporate party is "a meaningful one and to prevent the 'sandbagging' of an opponent by conducting a half-hearted inquiry before deposition but a thorough and vigorous one before the trial." Taylor, 166 F.R.D. at 362. If a corporate party takes the position during its Rule 30(b)(6) deposition that it has no knowledge concerning an area of inquiry, it cannot thereafter argue a contrary position at trial. Id.

MCC has asserted that Roberta Kiser's deposition testimony represents all the information that MCC has concerning its contribution to the settlement. Accordingly, at trial,

MCC would not be permitted to introduce any evidence of its contribution to the tort settlement other than what has already been produced. This is not to say that the Court has found that MCC committed a sanctionable violation, rather, it is simply an application of the Rules to MCC's decision to state that Roberta Kiser's testimony represents all knowledge it has concerning its contribution to Phillip Crum's settlement.

### III. CONCLUSION

The Court being otherwise sufficiently advised, and for the reasons discussed above,

IT IS ORDERED AS FOLLOWS:

(1) The Defendant's Motion for Sanctions [R. 127] is GRANTED, and consistent with this order:

    (i) The economic disparity between the Plaintiff, Martin County Coal, and Crum Motor Sales, is established for the purposes of this action.;

    (ii) On or before FRIDAY, MARCH 11, 2011, Defendant's counsel shall file a Bill of Costs with the Court, setting forth their reasonable expenses for the time spent during the deposition of John Poma and any court reporter's fees associated with that deposition. Pursuant to Rule 37(b)(2)(C), Martin County Coal shall pay all such reasonable costs.

Signed March 4, 2011.

